```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF GEORGIA
                          COLUMBUS DIVISION

AMERICAN FAMILY LIFE ASSURANCE   *
COMPANY OF COLUMBUS,
                                 *
     Plaintiff,
                                 *
vs.
                                 *   CASE NO. 4:17-CV-246 (CDL)
TROY HUBBARD, MARCUS JOHNSON,
ANIBAL ALCANTARA, DEBBIE CORT,   *
GARARD MCCARTHY, JULIO LEATY,
and MARTIN CONROY,               *

     Defendants.
```

O R D E R

Defendants removed the present action to this Court from the Superior Court of Muscogee County. In the state court action, Plaintiff sought an order compelling Defendants, who are current and former sales associates for Plaintiff, to arbitrate claims their counsel asserted on their behalf in correspondence to Plaintiff. Prior to the removal of this action, Plaintiff obtained from the state court judge a temporary restraining order preventing Defendants from filing any action against Plaintiff until the state court had an opportunity to rule on Plaintiff's motion to compel arbitration. After Defendants removed the action, Plaintiff moved this Court to compel arbitration (ECF No. 4). Plaintiff also sought an expedited hearing and ruling on its motion to compel arbitration before the expiration of the state court temporary restraining order.

In the alternative, Plaintiff asked the Court to convert the temporary restraining order into a preliminary injunction, to remain effective until the Court could rule on its motion to compel arbitration (ECF Nos. 7 & 10).  This Court held a hearing on December 28, 2017, the day before the state court temporary restraining order expired.  At that hearing, the Court, without objection, orally issued a preliminary injunction enjoining Defendants from pursuing litigation of their claims until January 5, 2018.  Today, the Court enters this Order deciding Plaintiff's motion to compel arbitration.

No genuine factual disputes exist to be tried.  Therefore, the Court proceeds based on the present record.  As explained in the remainder of this Order, that record establishes that the Court has jurisdiction, that the arbitration agreements entered into between the parties cover their disputes, that the agreements are enforceable, and that Plaintiff did not waive its right to insist on arbitration.  Accordingly, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, the Court grants Plaintiff's motion to compel arbitration (ECF No. 4).

## FACTUAL BACKGROUND

**I.  Defendants' Contractual Agreements with Plaintiff**

Plaintiff is a corporation that sells life, health, and accident insurance.  Defendants are all former or current sales associates for Plaintiff.  Plaintiff entered into a separate

associate agreement with each Defendant.  *See generally* Pl.'s Mot. to Expedite Ruling ("Pl.'s Mot. to Expedite") Ex. A, J. Arrington Aff. Ex 1, Hubbard Agreement, ECF No. 7-2 at 7–25; *id.* Ex. 2, Johnson Agreement, ECF No. 7-2 at 26–49; *id.* Ex. 3, Alcantara Agreement, ECF No. 7-2 at 50–74; *id.* Ex. 4, Cort Agreement, ECF No. 7-2 at 75–93; *id.* Ex. 5, McCarthy Agreement, ECF No. 7-2 at 94–106; *id.* Ex. 6, Leaty Agreement, ECF No. 7-2 at 107–31; *id.* Ex. 7, Conroy Agreement, ECF No. 7-2 at 132–42 [hereinafter, collectively, "Associate Agreements"].  The Associate Agreements are substantially identical, and they contain the same provision requiring the parties to arbitrate certain defined disputes (the "Arbitration Agreement").  *E.g.*, Hubbard Agreement § 10.1, ECF No. 7-2 at 21.  The Associate Agreements also contain a collective action waiver that states, "There shall be no consolidation of claims or class actions without the consent of all parties."  *E.g.*, *id.* § 10.4, ECF No. 7-2 at 22.

**II.  Defendants' Threatened Class Action**

On November 17, 2017, Plaintiff's counsel received from Defendants' counsel an offer to settle claims Defendants believed they could pursue against Plaintiff and AFLAC, Inc. ("AFLAC"), Plaintiff's parent company.  Defs.' Resp. to Pl.'s Mot. to Compel Arbitration Ex. A., D. Joffe Aff. ¶¶ 6–7, ECF No. 12-1; Pl.'s Mot. to Expedite Ex. B., L. Cassilly Aff. ¶ 4, ECF

3

No. 7-3. Along with his demand for settlement, Defendants' counsel included a draft class action complaint setting forth federal and state-law claims Defendants had against Plaintiff and AFLAC. D. Joffe Aff. ¶ 7; L. Cassilly Aff. ¶¶ 4–6; *see generally* L. Cassilly Aff. Ex. 1, Draft Class Action Complaint, ECF No. 7-3 at 6-98.

In the draft class action complaint, Defendants allege federal claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, the Federal Insurance Contributions Act ("FICA"), 26 U.S.C. § 3101 *et seq.*, and the Federal Unemployment Tax Act ("FUTA"), 26 U.S.C. § 3301 *et seq.* Draft Class Action Complaint ¶¶ 203-14. Defendants also assert state-law claims for fraud under California law and violations of various deceptive trade practice acts and consumer fraud statutes of California, Arizona, Arkansas, Colorado, Connecticut, Delaware, Florida, Idaho, Illinois, Massachusetts, Minnesota, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, and Vermont. *Id.* ¶¶ 215-385.

## SUBJECT MATTER JURISDICTION

A party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . in a

4

civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  "Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983).  "[W]here the parties' controversy has not yet been embodied in preexisting litigation, '[a] district court entertaining a § 4 petition' must decide for itself 'what "a suit" arising out of the allegedly arbitrable controversy would look like.'" *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1255 (11th Cir. 2011) (second alteration in original) (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 77 (2009) (Roberts, C.J., concurring in part and dissenting in part)).  In this case, the Court does not have to look far to determine what the arbitrable controversy would look like because the underlying dispute is clearly set out in the draft class action complaint that Defendants' counsel sent to Plaintiff's counsel.

Defendants implicitly threatened to assert in court the federal and state-law claims set forth in the draft class action complaint if Plaintiff did not meet their demand for settlement. The Court would clearly have federal question jurisdiction over the federal claims.  Further, both the federal and the state-law

claims arise out of Plaintiff's allegedly deceptive recruitment practices and its relationship with Defendants as sale associates.  The Court would thus have supplemental jurisdiction over the state-law claims.  Because the Court would have jurisdiction over a suit on the underlying dispute, it has subject matter jurisdiction over Plaintiff's petition to compel arbitration of that dispute pursuant to the FAA and the Arbitration Agreement.

## DISCUSSION

**I. The Arbitration Agreement Encompasses the Underlying Dispute**

Under the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable[.]"  9 U.S.C. § 2.  "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1214 (11th Cir. 2011) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24– 25).  Notwithstanding this federal presumption in favor of arbitration, "the parties will not be required to arbitrate when they have not agreed to do so."  *Id.* (quoting *Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418, 1419 (11th Cir. 1990)).  To

6

determine whether the parties agreed to arbitrate the underlying dispute, the Court must decide whether the Arbitration Agreement encompass the claims alleged in the draft class action complaint.[1]

Each Associate Agreement contains the following Arbitration Agreement:

> Except for an action by [Plaintiff] to enforce [certain contractual provisions], *the parties agree that any dispute arising under or related in any way to [the Associate Agreement]* ("Dispute"), to the maximum extent allowed under the Federal Arbitration Act ("FAA"), *shall be subject to mandatory and binding arbitration*, including any Dispute arising under federal, state or local laws, statutes or ordinances (for example, statutes prohibiting anti-competitive conduct, unfair business practices and discrimination or harassment on the basis of race, sex, religion, color, national origin, age or disability) or arising under federal or state common law (for example, claims of breach of contract, fraud, negligence, emotional distress or breach of fiduciary duty). . . . THE PARTIES WAIVE ANY RIGHT TO TRIAL BY A JURY IN A COURT OF LAW TO RESOLVE ANY DISPUTE.

Hubbard Agreement § 10.1, ECF No. 7-2 at 21 (emphasis added); *see also* Johnson Agreement § 10.1, ECF No. 7-2 at 44-45; Alcantara Agreement § 10.1, ECF No. 7-2 at 69-70; Cort Agreement § 10.1, ECF No. 7-2 at 89; McCarthy Agreement § 10.1, ECF No. 7-2 at 104; Leaty Agreement § 10.1, ECF No. 7-2 at 126-27; Conroy Agreement § 10.1, ECF No. 7-2 at 140.  As Defendants' counsel

---

[1] As previously noted, Defendants' claims have not been asserted in a lawsuit.  But they were outlined in detail in a draft class action complaint Defendants' counsel sent to Plaintiff's counsel.  Thus, the best description of the underlying dispute between Defendants and Plaintiff can be found in that draft class action complaint.

conceded at the hearing, Defendants' claims against Plaintiff are certainly encompassed by the Arbitration Agreement's broad language. Defendants' state-law claims, which are couched in terms of fraud and unfair business practices, arise from Plaintiff's allegedly deceptive conduct in its recruitment of Defendants as sales associates. Such a dispute clearly arises under and is related to the Associate Agreements. In fact, the Arbitration Agreement expressly contemplates that such fraud and unfair business practices claims shall be arbitrated. Defendants' ERISA, FICA, and FUTA claims arise out of Plaintiff's alleged misclassification of Defendants as independent contractors instead of employees. In the Associate Agreements, Defendants agreed that they would perform their contractual obligations as independent contractors. *E.g.*, Hubbard Agreement § 1.3, ECF No. 7-2 at 8. A dispute as to whether Defendants were misclassified as independent contractors arises under and is related to the Associate Agreements because that disputed classification is an express provision of those agreements. Consequently, the underlying dispute between Defendants and Plaintiff falls within the scope of the Arbitration Agreement.

**II. The Arbitration Agreement Is Enforceable**

Even though Defendants' counsel concedes that the underlying dispute falls within the scope of the Arbitration

8

Agreement, he argues that the Arbitration Agreement is unenforceable. "[A]rbitration agreements are enforceable except where state or federal law provides grounds for their revocation." *Pendergrast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1133 n.13 (11th Cir. 2010); *see* 9 U.S.C. § 2 (stating that arbitration agreements are "valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*" (emphasis added)). "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Id.* (quoting *Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir. 2007)). Defendants contend that the Arbitration Agreement is unenforceable because it violates federal law, because it is otherwise unconscionable due to its substantive "one-sidedness," and because Plaintiff materially breached one of its terms. The Court finds Defendants' arguments unpersuasive and that the Arbitration Agreement in each of Defendants' Associate Agreements is enforceable.

> A. The Arbitration Agreement Is Not Unenforceable Under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 157 *et seq.*

Relying on decisions from other Circuit Courts of Appeals and the opinion of the NLRB, Defendants maintain that requiring them to agree to arbitration and to waive their right to proceed collectively constitutes an unfair labor practice under 29

9

U.S.C. § 158(a)(1). Thus, they argue that the Arbitration Agreement is unenforceable because it is illegal under federal labor law. But they must concede, as Defendants' counsel did at the hearing, that their position is contrary to Eleventh Circuit precedent. *See Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1334 (11th Cir. 2014) (holding that the Fair Labor Standards Act did not preclude enforcement under the FAA of employer/employee arbitration agreements that contained collective action waivers).[2] And this Court is bound by the decisions of the Eleventh Circuit.[3] Accordingly, the Court rejects Defendants' argument that the collective action waiver makes the Arbitration Agreement unenforceable.

B. The Arbitration Agreement Is Not Unconscionable.

Defendants also maintain that the Arbitration Agreement is unconscionable because it is one-sided in favor of Plaintiff.

---

[2] To determine whether other federal law prohibits enforcement of an arbitration agreement under the FAA, the central question is whether the FAA's mandate "that arbitration agreements be enforced according to their terms [is] overridden by a 'contrary congressional command.'" *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1330 (11th Cir. 2014) (quoting *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). Notably, in *Walthour*, the Eleventh Circuit cited approvingly the Fifth Circuit's decision in *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013), which held that the NLRA "does not contain a contrary congressional command overriding the application of the FAA" to arbitration agreements with collective action waivers. *See Walthour*, 745 F.3d at 1336 (citing *D.R. Horton*, 737 F.3d at 362).

[3] The Court acknowledges that this precise issue is currently under consideration by the Supreme Court. *See Epic Sys. Corp. v. Lewis*, Nos. 16-285, 16-300, 16-307 (U.S. argued Oct. 2, 2017). But until the Supreme Court issues a ruling contrary to Eleventh Circuit binding precedent, this Court cannot simply disregard that precedent.

In support of this argument, Defendants point out that Plaintiff may not have to arbitrate every single claim it has against Defendants because the Arbitration Agreement expressly carves out certain contract claims that Plaintiff may bring against Defendants. But such a limited carve-out is not sufficient to make the Arbitration Agreement unconscionable. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005) (finding, under Georgia law, that an arbitration clause was not unconscionable even though many claims that an employee would typically bring were subject to arbitration while claims that the employer would likely bring were not). Here, as in *Caley*, "[t]he promises are mutual: both parties are required to arbitrate covered claims, and neither is required to arbitrate non-covered claims." *Id.* Consequently, the Court finds that the Arbitration Agreement is not unconscionable.

C.  Plaintiff's Breach of the Arbitration Agreement Does Not Render It Unenforceable.

Defendants also argue that the Arbitration Agreement is not enforceable because Plaintiff failed to follow its requirement that "all papers filed in court in connection with any action to enforce this Arbitration Agreement or the arbitrators' award shall be filed under seal," *e.g.*, Hubbard Agreement § 10.2, ECF No. 7-2 at 22. When Plaintiff filed this action in state court, Plaintiff did not, contemporaneous with the filing of its

11

complaint, seek to seal any of the documents, including Defendants' draft class action complaint, which was filed as an exhibit to Plaintiff's complaint. D. Joffe Aff. ¶ 14. Defendants maintain that Plaintiff's failure to file the documents under seal was a material breach of the Arbitration Agreement, and that this breach excuses their performance of the other terms of the Arbitration Agreement. The Court finds that Plaintiff's conduct does not constitute a material breach sufficient to excuse Defendants' obligation to arbitrate.

Under Georgia law,

> [a] breach is material when it is so substantial and fundamental as to defeat the object of the contract. In other words . . . the act failed to be performed must go to the root of the contract. A breach which is incidental and subordinate to the main purpose of the contract does not warrant termination.

*Vidalia Outdoor Prods., Inc. v. Higgins*, 701 S.E.2d 217, 219 (Ga. Ct. App. 2010) (quoting *Forsyth Cty. v. Waterscape Svcs., LLC*, 694 S.E.2d 102, 111–12 (Ga. Ct. App. 2010)). In this case, Plaintiff's failure to file papers under seal does not defeat the object of the Arbitration Agreement, which is to ensure that certain disputes are resolved in an arbitral forum. Therefore, this alleged breach does not excuse performance of Defendants' clear obligation under the Arbitration Agreement to arbitrate their disputes.

## III. Plaintiff Did Not Waive Its Right to Enforce the Arbitration Agreement

Although it is not entirely clear from their briefing or arguments at the hearing, Defendants appear to assert that, even if the Arbitration Agreement covers the underlying dispute and is otherwise enforceable as a matter of contract, Plaintiff waived its right to enforce it by not filing the Defendants' draft class action complaint under seal in the state court action. The Court has previously rejected Defendants' argument that this conduct was a material breach of the Arbitration Agreement that excused performance of the contract. Defendants presumably maintain that such conduct nevertheless supports a waiver claim. The distinction between conduct being insufficient to excuse another party's performance of the contract and that very same conduct being sufficient to constitute a waiver of the right to insist on the performance of the contract seems a bit academic and professorially semantic. But with sufficient intellectual squinting, the Court can see the fine distinction and will separately address Defendants' waiver argument. To determine whether a party waived its right to arbitrate, courts must decide "if, 'under the totality of the circumstances,' the party 'has acted inconsistently with the arbitration right,' and, second, [courts] look to see whether, by doing so, that party 'has in some way prejudiced the other

13

party.'"  *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315-16 (11th Cir. 2002) (quoting *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990)).  In this case, Defendants failed to establish either requirement.

First, Plaintiff's failure to file papers under seal did not evince any intent to avoid arbitration or to dispense with its arbitration right.  Plaintiff failed to comply with that requirement *while insisting on arbitration*, which conduct clearly shows its intent to exercise its arbitration right.  At best (for Defendants), Plaintiff's conduct constitutes a breach of the Arbitration Agreement, and "a breach alone . . . cannot rise to the level of waiver."  *Id.* at 1319.  Nor, as the Court has previously explained, does the mere failure to comply with a single term in an arbitration agreement necessarily excuse a party's performance of its arbitration obligation.

Second, Defendants failed to show any prejudice that resulted from Plaintiff's failure to file the draft class action complaint under seal.  Now that the draft class action complaint is in the public domain, Defendants contend that another lawyer could file it, depriving Defendants of their chosen counsel and status as class representatives. But Defendants' formulation of prejudice puts the cart before the horse.  Specifically, Defendants can only "lose" their status as class representatives and their choice of class counsel if they had the right to

14

resolve the underlying dispute through a class action lawsuit *in the first place*. Defendants did not have that right because the dispute clearly falls within the scope of an enforceable arbitration agreement. Defendants have thus suffered no prejudice by Plaintiff's failure to file the draft class action complaint under seal. Consequently, the Court finds that Plaintiff did not waive its right to enforce the Arbitration Agreement in Defendants' Associate Agreements.

CONCLUSION

The Associate Agreements contain an enforceable arbitration agreement that requires Defendants to arbitrate their disputes with Plaintiff, and Plaintiff did not waive its right to insist on arbitration. Therefore, Plaintiff's motion to compel arbitration (ECF No. 4) is granted. Defendants are directed to proceed to arbitration in accordance with the terms of the Arbitration Agreement in their Associate Agreements.[4] Defendants are prohibited from filing any action in any court asserting any claims against Plaintiff arising out of the disputes that are the subject of Defendants' draft class action complaint previously described in this Order.

---

[4] Defendants' counsel suggested at the hearing that Plaintiff's action to compel arbitration was premature because Defendants had not yet finalized their claims and were unprepared to proceed with them immediately. If that is the case, this Order should not be interpreted to require Defendants to move forward with the arbitration of their claims immediately. But when they are prepared to proceed, they must do so in an arbitral forum consistent with the Arbitration Agreement in their Associate Agreements, not in a court of law.

15

IT IS SO ORDERED, this 3rd day of January, 2018.

                                            S/Clay D. Land
                                            CLAY D. LAND
                                            CHIEF U.S. DISTRICT COURT JUDGE
                                            MIDDLE DISTRICT OF GEORGIA